IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**WILLIAM BRYAN GLASS**                                                                **PLAINTIFF**

v.                                                                       **CIVIL ACTION NO. 2:20-cv-207-TBM-RPM**

**COMMISSIONER OF**
**SOCIAL SECURITY**                                                                   **DEFENDANT**

### ORDER ADOPTING REPORT AND RECOMMENDATION AND AFFIRMING THE FINAL DECISION OF THE COMMISSIONER

Before the Court is the Report and Recommendation [15] entered by Magistrate Judge Robert P. Myers on January 12, 2022. William Bryan Glass appeals the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits under the Social Security Act. Glass argues that the Administrative Law Judge improperly evaluated the medical opinion of Dr. Jason Taylor and incorrectly found that Glass' alleged fibromyalgia condition was not a medically determinable impairment. The Court accepts Magistrate Judge Myers' Report and Recommendation, and finds that substantial evidence supports the Administrative Law Judge's determination that Glass is not disabled.

### I. BACKGROUND

William Glass filed for disability with the Social Security Administration beginning February 25, 2017, alleging that he suffered from fibromyalgia and rheumatoid arthritis. [8], pg. 170. The Administration denied his claim, finding that he was not disabled. *Id.* at 101. After the Administration denied his claim again on reconsideration, Glass requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 110, 119. The ALJ determined that Glass had a severe impairment of inflammatory arthritis with residual neck, back, and shoulder pain; but also found

that Glass' alleged fibromyalgia was not a medically determinable impairment. *Id.* at 17-18. Based on the evidence in the record, the ALJ concluded that Glass had a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R § 404.1567(b), except that Glass can occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; and occasionally balance, stoop, crouch, kneel, and crawl. *Id.* at 19. Based on this RFC, the ALJ found that Glass could perform his past work as a rig supervisor. *Id.* at 28. Therefore, the ALJ ultimately concluded that Glass was not disabled within the meaning of the Social Security Act. *Id.* The Administration's Appeal Counsel declined Glass' request for review. *Id.* at 1.

Glass then filed his Complaint in this Court appealing the ALJ's decision. Glass raised two issues. First, Glass argued that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate the opinions of Physical Therapist Courtney Roberts and Dr. Jason Taylor. Second, Glass asserted that the ALJ erred at step two of the disability analysis because he did not find Glass' fibromyalgia to be a medically determinable impairment. Magistrate Judge Myers entered a Report and Recommendation [15] that recommended the ALJ's decision be affirmed. Magistrate Judge Myers found that the ALJ adequately evaluated Courtney Robert's and Dr. Taylor's opinions. Magistrate Judge Myers further found that the ALJ's RFC determination was supported by substantial evidence. Regarding the second issue raised by Glass, Magistrate Judge Myers concluded that substantial evidence supported the ALJ's determination that Glass' alleged fibromyalgia was not a severe impairment, and, regardless, any error in not finding the alleged fibromyalgia to be a severe impairment would be harmless. Glass objects to both of Magistrate Judge Myers' ultimate conclusions.

2

## II. STANDARD OF REVIEW

It is well-settled that "[p]arties filing objections must specifically identify those findings objected to." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (alteration in original) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). The Court must review any objected-to portions of a report and recommendation *de novo*. Such a review means that the Court will consider the record that has been developed before the Magistrate Judge and make its own determination on the basis of that record. *United States v. Raddatz*, 447 U.S. 667, 675, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). The Court need not consider frivolous, conclusive, or general objections. *Johansson v. King*, No. 5:14-cv-96-DCB, 2015 WL 5089782, at *2 (S.D. Miss. Aug. 27, 2015) (citing *Battle*, 834 F.2d at 421). Additionally, "[m]erely reurging the allegations in the petition or attacking the underlying conviction is insufficient to receive *de novo* review." *Id.* When a *de novo* review is not warranted, the Court need only review the findings and recommendation and determine whether they are either clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

"The Social Security Act defines disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity." *McCuller v. Barnhart*, 72 F. App'x 155, 157 (5th Cir. 2003) (citing 42 U.S.C. § 423(d)(1)(A)). The Social Security Administration uses a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The first four steps place the burden on the claimant. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the ALJ determines whether the claimant is employed in a substantial gainful activity. *Id.* at (4)(i). If the claimant performs substantial gainful activity, the claimant is not disabled. *Id.* Second, the ALJ determines whether the claimant has a

severe medically determinable impairment. *Id.* at (4)(ii). If the claimant does not have a severe impairment, the claimant is not disabled. *Id.* Third, the ALJ considers whether the claimant's severe impairments meet or medically equal one of the impairments listed at 20 C.F.R. § Pt. 404, Subpt. P, App. 1. *Id.* at (4)(iii). If so, the claimant is disabled. At the fourth step, the ALJ will first determine the claimant's residual functional capacity ("RFC"). *Id.* at (4)(iv). Then, the ALJ compares the claimant's RFC to the claimant's past relevant work. *Id.* If the claimant can still perform the claimant's past relevant work, then the claimant is not disabled. Finally, the ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant can perform other work. *Id.* at (4)(v). "[T]he burden shifts to the [Commissioner] to establish that the claimant can perform relevant work. If the [Commissioner] meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." *Muse*, 925 F.3d at 789. If the claimant can make the adjustment to other work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The Court "review[s] the [Commissioner's] decision to deny disability benefits by determining whether substantial evidence in the record supports the decision and, further, whether proper legal standards were used in evaluating the evidence." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). While more than a scintilla, substantial evidence is less than a preponderance. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (citing

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). "It must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Harrell*, 862 F.2d at 475 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotations omitted). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute the Court's judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475) (internal alteration omitted).

### III. DISCUSSION

The ALJ first determined that Glass has not been employed in substantial gainful activity since February 25, 2017. [8], pg. 17. Next, the ALJ determined that Glass suffers from one severe impairment: inflammatory arthritis with residual neck, back, and shoulder pain. *Id*. Because the ALJ found a severe impairment, the ALJ moved on to the third step and concluded that Glass does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments at 20 C.F.R. § Pt. 404, Subpt. P, App. 1. *Id*. at 19. So the ALJ moved on to step four and determined that Glass had the RFC "to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; and occasionally balance, stoop, crouch, kneel, and crawl." *Id*. Based on this RFC, the ALJ found that Glass is capable of performing his past relevant work as a rig supervisor. *Id*. at 28. Thus, the ALJ concluded at step four that Glass is not disabled within the meaning of the Social Security Act. *Id*.

5

On appeal to this Court, Glass argued that the ALJ's RFC determination was unsupported by substantial evidence because the ALJ did not properly evaluate the opinions of Physical Therapist Courtney Roberts and Dr. Jason Taylor, and that the ALJ erred by not finding Glass' alleged fibromyalgia to be a medically determinable impairment. Glass did not contest the ALJ's conclusion at step three. Magistrate Judge Myers' rejected both grounds in the Report and Recommendation. Glass objects to both of Magistrate Judge Myers' ultimate conclusions.

**1. The ALJ adequately evaluated the opinion of Dr. Taylor and supported the RFC determination with substantial evidence.**

Glass objects to the Report and Recommendation's unfavorable conclusion on his first issue. Specifically, he objects to Magistrate Judge Myers' findings regarding the ALJ's assessment of Dr. Taylor's opinion that Glass is unable to work full time, arguing that the ALJ "relied on cherry-picked evidence." [16], pg. 1. But Glass does not object to the Report and Recommendation's finding that the ALJ adequately evaluated the opinion of Physical Therapist Roberts. The Court finds that Magistrate Judge Myers' unobjected-to conclusion regarding Roberts' opinion is without clear error and not contrary to law, and it is adopted. The Court will review Glass' objection to the Report and Recommendation's findings on the opinion of Dr. Taylor *de novo*.

"The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985) (citing *Jones v. Heckler*, 702 F.2d 616, 616 (5th Cir. 1983)). "The claimant's RFC assessment is a determination of the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005)). "The RFC assessment

6

must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). An ALJ is required to articulate how persuasive he found the medical opinions to be. 20 C.F.R. § 404.1520c(b).

For claims filed on or after March 27, 2017—like the present claim—the ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the medical opinions with the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). The ALJ is required to explain how he considered the supportability and consistency factors but is not required to explain how he considered the other three factors. 20 C.F.R. § 404.1520c(b)(2). As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Dr. Taylor's opinion can be found in a Residual Functional Capacity Questionnaire he completed on January 17, 2019. [8], pp. 346-52. He opined that Glass can sit or stand for less than two hours in a workday, and can only sit or stand for five minutes at a time before needing to change position. *Id.* at 349. He opined that Glass can walk for less than two hours in a workday. Dr. Taylor

further claimed that Glass needs a twenty to thirty minute break every ninety minutes to lie down or sit quietly. *Id.* at 349-50. He also opined that Glass can lift less than ten pounds, and even then only rarely. *Id.* at 350. Dr. Taylor further stated that Glass can never stoop down, crouch, squat, climb ladders, or climb stairs. *Id.* He claimed that Glass has significant limitations reaching, handling, or using his fingers. *Id.* at 351. He also anticipated that Glass would be absent from work more than three times a month were he to be hired. *Id.* at 352. Based on these opinions, Dr. Taylor ultimately stated that Glass is unable to work full time. *Id.*

### i. Supportability

The ALJ found that Dr. Taylor's opinion was not persuasive. *Id.* at 27. The ALJ explained that Dr. Taylor's opinion was not supported by Dr. Taylor's own treatment notes. *Id.* The ALJ pointed out Dr. Taylor's note from his August 2018 examination stated that Glass "has consistently had excellent responses to steroid trials." *Id.* at 22, 359. The ALJ also pointed to Dr. Taylor's December 2018 note that Glass had been off steroids for three weeks without any flareups. *Id.* at 22, 355. Dr. Taylor also noted the same day that methotrexate had resulted in "overall clinical improvement." *Id.*

Glass argues that the ALJ "cherry-picked" the evidence, selecting only the evidence that supported the ALJ's decision. Indeed, the Fifth Circuit directs that "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Glass points to Dr. Taylor's August 2018 treatment note stating that Glass reported a history of chronic joint pain in the hands, elbows, shoulders, hips, feet, cervical neck, and lower back; and assessing him with polyarthritis. [8], pg. 359. Glass also points to Dr. Taylor's December 2018 treatment note stating that Glass continued to experience

joint pain in the cervical and lumbar spine, bilateral shoulders, and elbows. *Id.* at 355. However, these notes merely support a diagnosis of arthritis, which the ALJ did find to be a severe impairment suffered by Glass. These notes do not necessarily support the extreme limitations that Dr. Taylor proposed in his medical opinion. The ALJ adequately explained how Dr. Taylor's medical opinion was not supported with his own notes that Glass was responding positively to the medication that Dr. Taylor prescribed, and the ALJ's determination was supported by substantial evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ([P]ain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling.").

### ii. Consistency

The ALJ also determined that Dr. Taylor's medical opinion that Glass cannot work full time was inconsistent with Glass' more recent examinations. The ALJ noted that in December 2019, an examination by Nurse Practitioner Marion Linton at a different clinic, Total Pain Care, found that Glass only had mild tenderness in the lower cervical region and lower lumbar region, no tenderness in his extremities, normal range of motion, normal gait, and was able to stand without difficulty. [8], pp. 27, 860. Glass reported an overall pain rating of three out of ten. *Id.* at 24, 854. The ALJ also found persuasive the more recent August 2019 opinion of Dr. Cherilyn Hebert determining that Glass is limited to light work. *Id.* at 27, 98. Glass does not challenge the persuasiveness of Dr. Hebert's opinion.

Glass again charges the ALJ with picking and choosing only the evidence that supports the ALJ's decision and ignoring the rest. He points to the following record evidence. In December 2017 and again in March 2018, Dr. Muhammad Ijaz noted that Glass had symptoms of pain and tenderness to the touch of the bilateral upper and lower extremities and found a likely diagnosis of

inflammatory arthritis and fibromyalgia. *Id.* at 676, 633-34. In August 2019, treatment notes from Total Rehab Physical Therapy described moderate tenderness in Glass' lumbar and thoracic spine, a painful and limited range of motion in the lumbar spine, and deficits in core strength, posture, spasms, and flexibility. *Id.* at 464-65. In multiple examinations between July and September of 2019, Nurse Practitioner Linton found that Glass had mild tenderness of the lower cervical spine and the lumbosacral spine,[1] and a mildly reduced range of motion for both. *Id.* at 413, 427, 841, and 849.

But contrary to Glass' charges of cherry-picking, the ALJ's opinion thoroughly considers most of the evidence Glass identifies.[2] Much like the evidence that Glass raised from Dr. Taylor's own notes, this objective medical evidence is not necessarily consistent with the extreme physical limitations Dr. Taylor opined Glass to have. Moreover, other evidence from the same sources that Glass cites is inconsistent with Dr. Taylor's opinion. For instance, the ALJ mentioned that Dr. Ijaz found that Glass had a full range of motion of the cervical spine and that a trial of Medrol Dosepak medication "helped his symptoms significantly." *Id.* at 289, 293. Treatment notes from Glass' second visit to Total Rehab Physical Therapy in September 2019 described Glass as "able to perform exercises correctly with no complaints of pain." *Id.* at 461. The physical therapist also noted that "[t]he patient's progress towards goals is excellent and his tolerance to treatment is excellent." *Id.* And Glass showed steady improvement over the course of Nurse Practitioner

---

[1] In the July 2019 examination, Linton described Glass' cervical spine tenderness as "mild," but not his lumbosacral spine tenderness. [8], pg. 413. But in each later examination Linton described both as mild. *Id.* at 427, 841, and 849.

[2] The ALJ's opinion does not expressly mention Physical Therapist Green's findings of spine tenderness, limited range of motion, and core deficiencies. However, the ALJ thoroughly discussed similar findings from numerous other physical examinations. All the other record evidence Glass mentions in support of his position was directly addressed in the ALJ's opinion.

10

Linton's examinations at Total Pain Care. In his July 2019 examination, Glass described his overall pain level as six out of ten. *Id.* at 411. Nurse Practitioner Linton found mild tenderness in his cervical spine, facet tenderness in his lumbosacral spine, and mildly reduced range of motion in both. *Id.* at 413. By his December 2019 examination, though, Glass reported his overall pain level to be three out of ten. *Id.* at 858. He still had mild tenderness in his cervical spine, but now the tenderness in his lumbosacral spine was also described as mild, and he had normal range of motion in both. *Id.* at 860. The same examination showed that his paraspinal muscle strength and tone were normal, his bilateral upper and lower extremities were normal, his gait was normal, and he could stand without difficulty. *Id.* Substantial evidence supports the ALJ's determination that this evidence was inconsistent with Dr. Taylor's opinion.

Glass points to some of his MRI imaging results. MRI imaging of Glass' cervical and lumbar spine in March 2017 revealed mild disc bulging and hypertrophic ridging at C4-5, C5-6, and C6-7; mild spondylosis at the mid cervical spine, and degenerated discs at L4-5 and L5-S1. [8], 416-17.[3] In October 2019, imaging showed disc bulging and osteophytic ridging with cord abutment at C4-C5, C5-C6, and C6-C7; as well as arthropathic facet changes at L3-L4; disc bulging, degenerative arthropathic facet changes, and bilateral neural canal narrowing at L4-L5; and mild anterolithesis of L5 on S1. *Id.* at 844-45. Imaging in November 2019 displayed spondylotic changes of Glass' cervical spine, especially at C6-C7, which showed moderate to severe right and moderate left foraminal narrowing. *Id.* at 434. The ALJ considered all of this evidence, though, and agreed that it supported a degeneration of Glass' lumbar and cervical spine since his onset date. But, the ALJ

---

[3] The ALJ's opinion discusses the March 2017 MRI, but does not mention the mild disc bulging and hypertrophic ridging at C4-5, C5-6, and C6-7. [8], pg. 20. The ALJ does mention the other findings from the March 2017 MRI, along with the results from the other MRI imaging tests that Glass identifies. *Id.* at 23-24.

found, when compared to the relatively mild results of Glass' examinations, the diagnostic imaging does not support Dr. Taylor's finding that Glass is unable to work full time. *Id.* at 25.

Finally, Glass points to a brief 2017 letter from Dr. Aremmia Tanious as consistent with the opinion of Dr. Taylor. Dr. Tanious stated that Glass "suffers from Fibromyalgia, depression, [and] insomnia"; is unable to do "any type of work"; and is "considered disabled." *Id.* at 263. Dr. Tanious also opined that "I do not expect any further improvement in his condition." *Id.* But the ALJ found Dr. Tanious' letter to be neither valuable nor persuasive because the determination of whether Glass is "disabled" is an issue reserved for the ALJ. 20 C.F.R. § 404.1520b(c)(3)(i). Glass has not challenged the ALJ's decision regarding Dr. Tanious' letter.

### iii. Conclusion

Ultimately, Glass objects to how the ALJ weighed Dr. Taylor's opinion. But the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute the Court's judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (citing *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)) (internal alteration omitted). Instead, the Court's review of the denial of disability benefits is limited to two issues: "(1) whether the [ALJ] applied the proper legal standards, and (2) whether the [ALJ's] decision is supported by substantial evidence on the record as a whole." *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). "To the degree that [Glass] argues that the record supports greater functional limitations, the Court may not weigh the evidence as conflicts in the evidence are for the Commissioner to resolve." *Hodge v. Saul*, No. A-20-cv-742-DH, 2021 WL 3774210, at *3 (W.D. Tex. Aug. 25, 2021) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (internal quotation omitted) ("[C]onflicts in the evidence are for the Commissioner and not the courts to resolve.")). Glass does not assert

that the ALJ applied an incorrect standard. Further, the ALJ relied on substantial evidence to determine that Dr. Taylor's opinion was not supported by his treatment notes and inconsistent with the other evidence. Glass' first objection is overruled.

**2. The ALJ's determination that Glass' alleged fibromyalgia is not a severe impairment is supported by substantial evidence.**

The second step of the disability analysis is to determine whether the claimant has a severe "medically determinable" impairment. 20 C.F.R. § 404.1520(4)(ii). "If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that [the claimant is] not disabled." *Id.* For an alleged impairment to be medically determinable, "[the claimaint's] impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521.

The ALJ found that Glass had a severe impairment of inflammatory arthritis with residual neck, back, and shoulder pain. The ALJ also found that Glass' alleged fibromyalgia was not a medically determinable impairment. Glass appealed. Magistrate Judge Myers determined that substantial evidence supported the ALJ's conclusion that Glass' alleged fibromyalgia was not medically determinable. Magistrate Judge Myers also found that even if the ALJ erred in this finding, the error was harmless because the ALJ continued on to the next step of the disability analysis. Glass objects, arguing that the ALJ's failure to find Glass' fibromyalgia to be severe was not a harmless error. The Court will review Glass' objection *de novo*.

Glass' argument, that Magistrate Judge Myers erred in finding the ALJ's decision harmless, only matters if the ALJ's decision itself was in error. Indeed, Magistrate Judge Myers found that substantial evidence supported the ALJ's finding, and Glass does not make any argument against this finding in his Objections. Magistrate Judge Myers' finding in this regard is without clear error and not contrary to law.

Social Security Ruling 12-2P establishes how an ALJ determines whether a claimant suffers from medically determinable fibromyalgia. A physician's diagnosis alone is insufficient. SSR 12-2P, 2012 WL 3104869, at *2 (July 25, 2012). Instead, "the evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* The ALJ will "review the physician's treatment notes to see if they are consistent with the diagnosis of FM [fibromyalgia], determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities." *Id.* Two tests exist to determine whether a claimant has medically determinable fibromyalgia, one based upon the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, and the other based on the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. *Id.*

To meet the 1990 test, a claimant must show (1) "[a] history of widespread pain . . . in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months"; (2) "[a]t least 11 positive tender points on physical examination . . . . found bilaterally (on the left and right sides of the body) and both above and below the waist"; and (3) "[e]vidence that other disorders that could cause the symptoms or

signs were excluded." *Id.* at *2-3. The 2010 test is identical to the first, except for the second element. Instead of eleven positive tender points, the claimant must show: "repeated manifestations of six or more FM [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Id.* at *3 (footnotes omitted).

Here, some evidence on the record points to fibromyalgia. Dr. Tanious claimed that Glass suffered from fibromyalgia in the July 2017 "To Whom It May Concern" letter. [8], pg. 263. In a December 2017 examination, Dr. Tanious noted that Glass had tenderness in his neck and shoulder girdle, and found his diagnosis was "most likely fibromyalgia." *Id.* at 366. Also in December 2017, Dr. Ijaz found that Glass' "most likely diagnosis is fibromyalgia, inflammatory arthritis/connective tissue disease in the differential (unlikely given the lab results . . .)." *Id.* at 677. Dr. Ijaz listed that Glass had "[m]ultiple tender points in bilateral upper and lower extremities [and] hip and shoulder girdle." *Id.* In May 2018, Glass reported to Dr. Ruhal Vohra that he experienced symptoms of intermittent brain fog and difficulty with memory. *Id.* at 266. Dr. Tanious diagnosed Glass with fibromyalgia again in January 2019, along with spondylosis, and noted that he had "[t]enderness in neck, shoulder, and lower back. Tenderpoints [sic] noted scattered throughout extremities." *Id.* at 395.[4]

---

[4] Two nurse practitioners also assessed Glass with fibromyalgia. *See* [8], pp. 385, 414. But, "[a] licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence" of medically determinable fibromyalgia. SSR 12-2P, 2012 WL 3104869, at *2 (July 25, 2012). Additionally, just as the doctors who diagnosed Glass with fibromyalgia, the nurse practitioner's notes do not show the elements of either test accepted by the Court to find medically determinable fibromyalgia.

15

Other evidence in the record negates against fibromyalgia. In a May 2018 examination, Dr. Vohra remarked that Glass' "presentation for fibromyalgia is a bit atypical in that he relates complete resol[u]tion of his pain with oral steroids." *Id.* at 267. In Dr. Taylor's examinations from August 2018 through March 2019, Dr. Taylor noted that Glass had a past medical history of fibromyalgia, but assessed him with polyarthritis, rheumatoid arthritis, and generalized osteoarthritis. *Id.* at 353-360. In September 2019, Dr. Eric Pearson noted that Glass "may have a small component of fibromyalgia, but most of his pain is explained by pathology in the cervical and lumbar spine." *Id.* at 837. Dr. Pearson assessed Glass with cervical spondylosis, cervical degenerative disc disease, and cervical radiculitis. *Id.* at 836-37. After considering this record, the ALJ determined that while Glass' "medical records indicate a history of fibromyalgia; . . . there is no evidence that the above criteria [the elements described by SSR 12-2P] is met." [8], pg. 18.

On appeal, Glass focused his arguments on the 1990 test for fibromyalgia, which requires a history of widespread pain, at least eleven total positive tender points found on both sides of the body and above and below the waste, and the exclusion of other disorders that could cause the signs and symptoms.[5] SSR 12-2P elaborates that there are eighteen tender point sites to be tested, and the physician should perform digital palpitation with approximately nine pounds of force. SSR 12-2P, 2012 WL 3104869, at *3 (July 25, 2012). These points are specifically located at the: occiput (base of the skull); low cervical spine (back and side of the neck); trapezius muscle (shoulder);

---

[5] Glass briefly mentions the 2010 test for fibromyalgia in his Reply [14]. He notes that he reported experiencing intermittent brain fog and memory difficulties to Dr. Vohra. But he does not identify any other repeated manifestations of fibromyalgia signs and symptoms, of which at least six of which are required under the 2010 test. *See Mayeux v. Comm'r of Soc. Sec. Admin.*, No. cv-16-755-EWD, 2018 WL 297588, at *4 (M.D. La. Jan. 4, 2018) (finding substantial evidence supported the ALJ's finding that a claimant's alleged fibromyalgia was not medically determinable when the claimant "d[id] not explain how she meets the requirements of a MDI of fibromyalgia under the second test set forth in 12-2p"). Moreover, as will be shown, Glass has not shown evidence that other disorders which could cause the same signs or symptoms have been excluded, a requirement for both the 1990 and the 2010 tests.

supraspinatus muscle (near the shoulder blade); second rib (top of the rib cage near the sternum or breast bone); lateral epicondyle (outer aspect of the elbow); gluteal (top of the buttock); greater trochanter (below the hip); and inner aspect of the knee. *Id.*

Two doctors diagnosed him with fibromyalgia. But their diagnoses alone are insufficient. *Id.* at *2; *Hills v. Comm'r of Soc. Sec.*, No. CV 17-46-RLB, 2018 WL 1914291, at *3 (M.D. La. Apr. 23, 2018) ("Put simply, the existence of a diagnosis of fibromyalgia in a record before the ALJ does not necessarily equate to the existence of a medically determinable impairment."); *Eubanks v. Berryhill*, No. 1:17-cv-161-MTP, 2018 WL 3520131, at *4 (S.D. Miss. July 20, 2018) ("An alleged diagnosis and limited treatment of fibromyalgia does not meet the requirements of SSR 12-2p."). Instead, "[t]he record must contain all three prongs of at least one of the two paths laid out in SSR 12-2p." *Hills*, 2018 WL 1914291, at *3.

Both Dr. Tanious and Dr. Ijaz found multiple tender points in their physical examinations of Glass, but neither specify whether there were eleven or more tender points, whether the tender points were in the highly specific locations the test sets out, or the manner in which they tested for the tenderness. Glass argued on appeal that Dr. Ijaz's examination established at least eleven tender points. He asserts that if Dr. Ijaz found "multiple tender points" in the bilateral upper and lower extremities, hips, and shoulders (six locations), then it necessarily follows that Dr. Ijaz found at least twelve tender points in his examination. But just because the doctor found "multiple" points in six locations total does not necessarily lead to the conclusion that the doctor found at least two points at each location. Additionally, of the eighteen possible tender point locations described in SSR 12-2P, there is only one location on each extremity—the elbow or the knee. Thus, even if one assumed Dr. Ijaz were following the 1990 American College of Rheumatology Criteria for the

17

Classification of Fibromyalgia, his inexact description of Glass's tender points could suggest as few as eight tender point locations.[6] Regardless, the statements of Dr. Ijaz and Dr. Tanious are too unclear to definitively meet the criteria required for the ALJ to find fibromyalgia medically determinable. "The claimant has the burden of proving she has a medically determinable physical or mental impairment." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Glass has not met the burden to show that he had at least eleven tender points under SSR 12-2P's 1990 test.

And Glass has failed to meet the third element of either test: evidence that other disorders which could cause the same signs and symptoms were excluded. "Where various signs and symptoms are potentially attributable to more than one of a claimant's diagnoses, it is difficult, if not impossible, to determine exactly which signs and symptoms are attributable to which diagnosis without clear evidence in the objective medical records." *Hills*, 2018 WL 1914291, at *5. Dr. Ijaz found that Glass' "most likely diagnosis is fibromyalgia," but also found a differential diagnosis of "inflammatory arthritis/connective tissue disease"—even if unlikely. [8], pg. 677. Dr. Tanious diagnosed with fibromyalgia *and* spondylosis, a degenerative spine disease. Dr. Vohra noted that Glass' presentation for fibromyalgia was atypical because oral steroids helped with the pain. Dr. Pearson found that most of Glass' pain could be explained by spinal pathology rather than fibromyalgia, and diagnosed him with cervical spondylosis, cervical degenerative disc disease, and cervical radiculitis. Glass himself testified at the hearing, when asked whether his rheumatoid arthritis or fibromyalgia was most problematic, that they "play together hand in hand." *Id.* at 67. *See also* SSR 12-2P, 2012 WL 3104869, at *3 (July 25, 2012) (listing rheumatologic disorders as an example of other disorders that could cause similar pain symptoms as fibromyalgia).

---

[6] One tender point at each elbow and each knee, plus a tender point at each shoulder and hip equals eight total.

Thus, the ALJ had substantial evidence to find that neither test for fibromyalgia had been met. *See Hills*, 2018 WL 1914291, at *5 (affirming ALJ's finding that claimant's fibromyalgia was not medically determinable when "there [was] continuous evidence in the record of diagnoses of both gout and fibromyalgia, inconsistently assigning either one as primary, and a lack of test results ruling out other diagnoses that could cause Plaintiff's signs or symptoms"); *Jodie C. v. Berryhill*, No. 3:18-cv-1687-S, 2019 WL 3101689, at *15 (N.D. Tex. May 7, 2019), *report and recommendation adopted*, No. 3:18-cv-1687-S, 2019 WL 3081538 (N.D. Tex. July 15, 2019) (finding substantial evidence supporting ALJ's conclusion that a claimant's fibromyalgia was not medically determinable when the claimant was diagnosed and treated for both fibromyalgia and rheumatoid arthritis and there was no test results ruling out the claimant's spinal disorders as a cause of the symptoms). To the extent that Glass argues other evidence on the record may support medically determinable fibromyalgia, the Court may not reweigh the evidence as "conflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citing *Newton*, 209 F.3d at 452).[7]

Magistrate Judge Myers' finding affirming the ALJ's decision is without clear error and not contrary to law.[8] Because the ALJ relied on substantial evidence to determine that Glass did not

---

[7] *See also Eubanks v. Berryhill*, No. 1:17-cv-161-MTP, 2018 WL 3520131, at *4 (S.D. Miss. July 20, 2018) ("Although certain evidence supports Plaintiff's assertions [of fibromyalgia], this Court does not resolve conflicts in the evidence, and substantial evidence supports the ALJ's decision."); *Victoria G. v. Berryhill*, No. 1:17-cv-180-BL, 2018 WL 4471644, at *4 (N.D. Tex. Sept. 18, 2018) ("However, her burden is not to show that there is some evidence that might lead a different decisionmaker to find differently on this issue, but rather that there is insufficient evidence supporting the decision the ALJ here actually made. Merely presenting an alternative reading of the record evidence without showing that there is minimal or no evidence supporting the decision does not serve to prove her claim."); *Tebyanian v. Colvin*, No. 3:14-cv-01385-BH, 2015 WL 4475762, at *8 (N.D. Tex. July 22, 2015) ("Although [the claimant] offers evidence to support a finding that she suffered from fibromyalgia, judicial review of the ALJ's denial of benefits is limited to whether the ALJ's decision is supported by substantial evidence.").

[8] For the reasons discussed, even under a *de novo* review the Court would find that the ALJ relied on substantial evidence to support the conclusion that Glass' alleged fibromyalgia was not medically determinable.

19

have medically determinable fibromyalgia, Glass' objection to Magistrate Judge Myers' harmless error analysis is moot. Glass' second objection is overruled. The Social Security Administration's decision is affirmed.

### IV. CONCLUSION

The ALJ adequately evaluated the opinion of Dr. Taylor and substantial evidence supports the ALJ's RFC determination. Additionally, substantial evidence supports the ALJ's conclusion that Glass' alleged fibromyalgia was not a medically determinable impairment. The Report and Recommendation will be adopted as the opinion of this Court.

IT IS THEREFORE ORDERED AND ADJUDGED that the Report and Recommendation [15] entered by United States Magistrate Judge Robert P. Myers on January 12, 2022, is ADOPTED as the opinion of the Court.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff's Motion for Summary Judgment [20] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that the Commissioner of the Social Security Administration's final decision is AFFIRMED.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

THIS, the 31st day of March, 2022.

                                          TAYLOR B. McNEEL
                                          UNITED STATES DISTRICT JUDGE